The next matter on our calendar is Lock View v. Seneca Insurance Company. Okay, if you need a minute to get settled, that's fine. Okay, so Mr. Jones, you have 10 minutes, but you've reserved two minutes for rebuttal. So that gives you eight out of the gate, and if you're ready, we're ready. Yes, you can take off your mask if you wish. No one should feel they have to, but you certainly can. Thank you, Your Honors. May it please the Court, my name is Greg Jones, and I represent the appellant, Lock View LLC. As you are aware, this appeal involves arbitration proceedings, where my appellant tried to vacate the arbitration award. Now, the district court, the appellant, my client, tried to submit a motion to vacate. Now, it was a very brief motion, and the district court ruled that on multiple grounds. And so I've thrown pretty much every issue but the kitchen sink at you, and I know there's a lot of issues here, so I'll try to keep it brief and focus my argument on the more important ones that I think are more important. From the beginning, I think you're aware that this panel ruled that on the defendants, the appellee's motion to strike, portions of the appendix, they included the arbitration submissions, the issue submissions. I think that's important for this Court to consider, specifically because of the standard of review for a motion to vacate or a motion to confirm the arbitration award, which requires that a reviewing court review the arbitration submissions to review whether or not the arbitrator … reconsider our motion? No, Your Honors. No, no, no, no. That's not what I'm saying at all. I'm saying in terms of the standard of review for a motion to vacate or confirm an arbitration award, which is what this appeal is regarding, the district court's determination on whether or not the motion to vacate should be granted or not, the district court had to review the arbitration submissions. But it's undisputed now, based on your own motion to strike, which is not being contested here, that the arbitration submissions were not before the district court, despite our request to hold an evidentiary hearing. Now, I do not know what the … I was not the attorney at that motion to vacate. I came in much later. So I don't know what the idea was at that motion to vacate. I don't know what that attorney was thinking. My suspicion is that because of the litany of evidence that they had, the idea was, hey, district court, we want to have an evidentiary hearing. And I know the appellee is going to say, well, Lockheed didn't request that evidentiary hearing. There's a dispute there, so on and so forth. But we believe we did request that evidentiary hearing, and we want to present the issue submissions to the district court in an evidentiary hearing. But wouldn't it be incumbent, if your theory below was the arbitrator exceeded his authority, wouldn't it be incumbent on your client below to have submitted the evidentiary grounds for that assertion, not wait for the possibility of a hearing and introduce it as an exhibit, but to have that be part of the motion itself? I would avert, Your Honor. I wouldn't necessarily disagree with you, Your Honor. And frankly, in a perfect world, if I were the one to be doing that, I probably would have. But I would represent that it probably, the standard of review for whether or not a district court should have granted an evidentiary hearing is abuse of discretion. But in that standard of review, if there's a dispute of fact and a party requests an evidentiary hearing, there is some case law that says a district court has to grant that evidentiary hearing. But you don't really know if there's a dispute of fact until you see what the factual assertion is and then the counter, right? Respectfully, I disagree. Okay. Because here, I think at the very least, the district court had the contract, the arbitration agreement, that I would represent as ambiguous. So I would represent that the district court has at least the authority to say, hey, I need to see the arbitration submissions to determine whether or not the arbitrator- I mean, he presented his authority that the arbitration contract was ambiguous and didn't clearly state what authorities he had. And you could, couldn't the district court determine? Well, I think that even the argument Lockheed was making that he did X or Y is a plausible interpretation of his authority under the contract. And so I don't even need to see the arbitration submissions. Respectfully, I don't think the district court made that argument. I don't think that is the district court's decision. Now, if this court says that that is their decision, that's, I think that could be a plausible decision. I mean, usually when we decide that an arbitrator exceeded his authority, it's because there's some clear term of the contract that says you are limited to deciding these issues and he went ahead and decided these other issues. It's not usually that, oh, well, it's ambiguous, maybe he could have decided this or not. Usually in that we defer to the arbitrator, right? Right. You're absolutely correct. So it is possible to decide this question without an evidentiary hearing. I, respectfully, I disagree. I don't think it's possible here. The arbitration agreement is very bare bones. It says that the arbitrator can determine the amount of loss, but it doesn't delineate how the arbitrator is supposed to do that. It doesn't delineate what that loss entails. It doesn't define what loss is necessarily within the scope of the arbitration agreement or the contract. It is inherently, it has a latent ambiguity that needs to be resolved, and the only way to resolve that is to look at the arbitration submissions. I understand. Why would looking at the arbitration submissions allow you to resolve the ambiguity in the arbitration agreement? Because then the parties determine what that loss is by their submissions. They determine, they set forth to the arbitrator, this is what we're disputing. This is what we want you to resolve. I mean, that's how I've always done arbitrations. But you're saying the ambiguity is in the contract. Correct, in the arbitration agreement. Okay. Yes. So in that sense, going back to the original argument, the fact of the matter remains that the district court did not have these submissions in front of him. So I would represent that that at least, at the very least, if the rest of my arguments do not require a reversal, it at least requires a remand for the district court to receive an evidentiary hearing and receive those issue submissions at a minimum. The other issues that are at hand here, there's an issue here regarding the Connecticut general statute submissions. And I know I'm running out of time, so I think this will be the last issue that I address here. I think the most pressing concern here that was raised for the first time in the reply briefs is whether or not the Connecticut general statutes are applicable in the arbitration proceedings under the Federal Arbitration Act. And this is a very nuanced topic that for the first time was raised in a reply brief before this court. And I think what's important here is that all the parties throughout all the litigation, mind you, there has been no evidence presented before the district court. So all we have presented before this appellate court is the proceedings before the district court and the pleadings before the district court. And every pleading cites to these Connecticut general statutes, and the district court never raises this issue. But, I mean, why would Connecticut's general statutes be presumed to be a part of the arbitration here, part of the arbitration agreement? Because the parties, originally this action was brought in the Connecticut Superior Court. So what? But what in the contract says that they're going to be applying Connecticut law, or that Connecticut's law regarding arbitrations is part of this contract? Parties can agree to apply whatever law they want. And what is there to indicate that they agreed to Connecticut law provisions in forming the arbitration agreement? Because they all proceeded under this Connecticut general statute. All the pleadings cited to it, they all proceeded under this. And frankly, it's not an issue before this court, respectfully. It's never been submitted as an issue before this court about whether or not this statute is applicable here. Well, but why does that work against you? So you're saying that the parties all assume that they all applied, and then all of a sudden you're coming and saying, well, we were all proceeding under all of these assumptions, and now it turns out that the parties didn't pay attention to some other statute that we think should apply. Are you raising a new issue? No, I'm not raising a new issue at all. I'm saying they do apply. I'm saying they do apply. I'm saying the appellee is raising it for the first time that they don't apply. I'm saying they do apply, and the only question before this court is the effect. So you're saying we should spend more time, we should send it back to determine whether they applied. But why would it apply, right? So this is a Federal Arbitration Act case, and usually state laws, the FAA preempts state laws that discriminate against arbitration, right? So why would the Connecticut statute apply? Respectfully, I disagree. This does not, state laws only, Federal Acts only preempt state laws when state laws would invalidate arbitration agreements. This would not invalidate the arbitration agreement. In West Rock, in the West Rock case, which goes back to the 60s, there was this claim that the arbitration award was invalidated for failure to comply with the timing requirement under 52-416. It was a labor negotiation context, but it was still arbitration. And this court said that the Federal preemption and the Federal commitment to enforcing these arbitration agreements is such that 52-416 and the timing requirements can't override an otherwise valid arbitration award. Is there something about that case that's different? I would say this case is distinguishable specifically because, first of all, there's an issue of fact about whether or not the parties have agreed to proceeding underneath these statutes. Second of all, all the pleadings up until now, I think, demonstrate a waiver in the fact that the parties have proceeded under this. And third, the issue about whether or not the statute is applicable here is not an issue before the court. The appellee could have submitted a different statement of issues for you under Federal Rule 28. They did not. They could have cross-appealed, saying that this issue should be before the court. It is not. I'm sorry, but you raised the issue of whether it was a manifest disregard for the law if they didn't follow the Connecticut general statutes. And their response to your argument is it's not a manifest disregard for the law because that law doesn't apply. I mean, isn't that – that's the issue you raised. No, but Matt, the issue before the court then, respectfully, is that it's not – the question before you right now is not about whether or not that statute applies. The question is about its effect on the arbitration. We are just assuming it applies. So you're saying on this appeal we must assume that the law applies? That is the – yes, Your Honor. And then on the assumption that it applies, we have to say whether it would be a manifest disregard not to follow it? Correct, Your Honor. But if we, in fact, think that it doesn't apply, why would we be obliged to conclude that it does? Because, like I just said, Your Honor, because all the parties have already proceeded under that assumption. But if we are going to start – so in the alternative, I see what you're saying, Your Honor. In the alternative, let's put it this way. In the alternative, the Connecticut Supreme Court has already said that it's a substantive law that is mandatory upon arbitrations that proceed in Connecticut. And again, Westrock was a labor negotiator. I have a question about the state of the Connecticut law. So the Connecticut Supreme Court has said in that earlier – in 1969 it said it's mandatory. But then in a later case, I think from 1989, it faults a party for not objecting when they find out that they're not going to meet the deadline, which suggests that it's not mandatory, which suggests that it can be waived if the party doesn't object to the failure to meet the deadline at an earlier point. So I think you're saying to Capozzi, Your Honor, which is what the district court cited to, was a later case. That was in – that's the – maybe that's the appellate court you're referring to? Well, no, I don't know. The case that I have in mind is Diamond Fertilizer versus – Yes, Diamond – International Corporation. Yes. Even if we were to conclude that the arbitration award was not – the plaintiff could not prevail in its attempt to vacate the award as untimely because it waived any right to object to the timeliness of the award by failing to object when it was notified of the date on which the award would be rendered. So even though there's this earlier case where the Connecticut Supreme Court said it's mandatory and everything's void if you don't follow the timeliness, there's another later case where the Connecticut Supreme Court says, well, if you don't object right when you find out that you're not going to comply with the deadline, then you basically waive the objection. If you read Diamond Fertilizer again, Your Honor, respectfully, I don't mean to disagree with you necessarily or say that you're incorrect. The way I read Diamond Fertilizer is that they waived those timelines by agreeing to the private arbitrator's timeline provisions. I believe they used a private arbitration like the AAA. I believe it was – it was a private arbitration company that had their own timelines. So that decision was you did waive the timeline requirements by agreeing to that arbitration provision, those timeline requirements there. There was no waiver here at all, or at least there's no evidence of it. Why wouldn't it be the case that when 30 days had elapsed and there wasn't a decision, your client should have said, hey, you're not complying with the Connecticut statute? That's the question. You would have had to object at that point. So here is the crux of that statute, and this comes into a statutory construction argument. Under 52416, if you read the statute the way it's written under the plain language, it renders the arbitration agreement, the decision, excuse me, of no legal effect. Respectfully, to the district court, it can't even affirm the award. It can't be vacated. It can't be affirmed. It just poof, disappears. It is of no legal effect. But it wasn't necessary to say that during the arbitration. You had this ace in the hole that you could play if it went bad, and if it went well for you, you just hoped they didn't notice? This seems pretty silly, I've got to say, Mr. Jones, but we're five minutes over. You've got two minutes for rebuttal. I want to hear from now Ms. Sheehan. Good morning, Your Honors. My name is Kristen Sheehan from Morrison Mahoney, LLP, and I represent the defendant Seneca Insurance Company. If you have questions, I'm happy to take those right away, or I can just immediately respond to some of the things plaintiff's counsel said. And since we're at the point of talking about whether 52414 and 52416 apply, I'd like to say a couple things about that. The first is that the district court in footnote one of his decision determined that the FAA applies to this case. The plaintiffs have never raised in their appeal here that there was anything wrong with the district court determining that the FAA applies here. Nobody would say the FAA doesn't apply here. It's an arbitration agreement. But I guess the issue is does this arbitration agreement bring into it Connecticut law? I mean, the parties could say that. They could say as part of our arbitration agreement we are going to apply Connecticut law and arbitrators must comply with the rules laid out in Connecticut law. But they didn't in this case, did they? That's absolutely correct. It does not say anything of that nature within the appraisal provision. Well, the agreement doesn't say that, but all of the back and forth between the parties in the proceedings before the district court, they're all citing Connecticut law and acting as if Connecticut law applies. So hasn't the working assumption of the parties been that Connecticut law applies? I wouldn't say that because what we should look at here is that Seneca moved under the FAA for arbitration and the appraisal provision that the two appraisers and the umpire would have looked at doesn't mention anything about Connecticut state law or the statutes applying. So when the appraisers were working and when the umpire was issuing its decision, there's no reason to believe from the request for the appraisal or the appraisal provision itself that anyone has agreed that the Connecticut statutes applied. So I think what we have to look at and what the district court should have looked at here was what could the arbitrator have been under the assumption that- And your position is that unless they agree that the Connecticut statutes apply, they can't because the FAA preempts the statute. Absolutely, yes. And why would that be? Because it is a statute that applies specifically to arbitration? That would be because the FAA does not include any specific procedural rules. And I've cited to a case, Bolt, that is the seminal case that expressly determined that if the parties incorporate a state law or state statute within their agreement, then that can be used to follow the procedure under the federal law. But because here we're operating under the FAA and we did not- I understand, but this happened in Connecticut, so Connecticut law would apply unless the FAA preempts Connecticut law, right? Correct, and we say here- Right, so you're saying that this law, the timeliness provision, is preempted by federal law. Like it is a nullity, and the only way that it applies to an arbitration is if the parties agree by contract to follow it. Correct, yes. I mean, that's a pretty dramatic decision, right? So why would that be? So opposing counsel just said, well, the FAA preempts state laws that would invalidate arbitration agreements. And the timeliness provision just provides that when you have an arbitration, there needs to be a decision rendered within 30 days. That doesn't invalidate the arbitration agreement. It makes arbitration agreements more efficient, actually. So why should we conclude that the FAA invalidates that Connecticut statute? Well, respectfully, Your Honor, we've already mentioned the Westrock case today, and we've cited two other cases that also were in the labor context, but specifically mentioned the Connecticut statutes regarding the oath requirement and the timeliness requirement, and specifically say that litigants should not be allowed to launch a technical challenge to an award after it's been given. So the case law that we're relying on says that the oath provision and the time provision from the Connecticut statutes would thwart the entire purpose of the FAA, which is to allow for efficient and inexpensive resolution of matters. The analysis in the Westrock case leans sort of heavily on the fact that it's in the context of a labor arbitration. Does that distinguish that from the sort of bread and butter FAA case that we're looking at here? So I agree it would distinguish Westrock from this matter, but what I would say is that that doesn't preclude this Court from following the same reasoning, because to further the purpose of the FAA, which, again, is for inexpensive, efficient disputes, and this particular one went on for six years, and now we have this bare-bones motion to vacate, launching technical after-the-fact challenges, thwarts the purpose of the FAA. So while the Westrock case was intent on preserving the purpose and, again, did relate to federal law, so we don't want to over- You keep saying it thwarts the purpose of the FAA, but the FAA has a specific preemption provision, right? And it says that agreements to arbitrate shall be enforceable, save upon such grounds as existent law or inequity for the revocation of any contract. The Connecticut statute that says there's a 30-day time limit doesn't purport to invalidate an arbitration agreement. It just purports to say that an arbitration award has to be rendered within a particular time. So I guess you're saying we should understand the preemption provision to actually be much broader than its text suggests and to preempt any state law that thwarts the general purposes of having more arbitrations? I see what you're saying, Your Honor. I'm not saying that we should go that far, but under the Westrock case, the Hines case, and the Truckers case, they were talking about the same 30-day provision and not allowing this technical challenge to invalidate an arbitration proceeding that took as long as it did. But do we have to decide that the Connecticut statute is invalid? So we've said that when there's manifest disregard for the law, it has to be that the parties knew the law applied and decided that they weren't going to follow it, right? So is there anything in the record that suggests that they were aware of the deadline and they decided that they weren't going to abide by the deadline? So a couple things on that, Your Honor. One, as I said at the beginning, Seneca moved under the FAA for the arbitration, and there's nothing in the appraisal provision itself that speaks to Connecticut law. So from that, we can't assume, I would say, like Lockview is, after the fact that the umpire would have been aware that there was this statutory 30-day timeline or this oath requirement. What I would also say is that if Lockview really believed in the strength of that argument, they would have led with it in their motion to vacate and not waited, which was filed in July of 2020, and not waited until their reply brief that they submitted after their unauthorized amended motion in November of 2019. If they had such a significant argument under the Connecticut state statutes that this award was invalid because of that time period or because they didn't follow the oath requirement, they would have said it at the very outset and given the court an opportunity to consider it. They didn't, and so they waived it, which is what we talk about in our brief. But in terms, just to go back for one second, we were talking about the time requirement. Lockview, again, if they were under the assumption that this arbitration was proceeding in accordance with the state timeliness rules, they would have known as of May 20th that it was untimely, and they would have known when we're approaching that time period that there was going to be an award that was invalid soon, and they could have objected then. They didn't, and the trial court properly followed the Capozzi case, which does use diamond fertilizer in its analysis to determine that a party that is aware and doesn't object to the time period waives the time period. And allowing the district court to find waiver, again, furthers the purpose of the FAA and is consistent with the very strict and narrow judicial review afforded to the arbitration process. So then in terms of Connecticut law, you're saying we should understand the Connecticut requirement to be waivable, even though the Connecticut Supreme Court said in that earlier case that it's mandatory and any decision that comes after 30 days is void. Well, I would take that decision seriously. It means that there's no, you can't waive it, right? If Connecticut law controls here, which it doesn't, and so I don't think the court needs to go that far and try to invalidate a Connecticut state law to reach the conclusion that the plaintiff did waive the 30-day requirement. I don't think we need to invalidate it, but just like the West Rock case and the truck case, the court can determine that it's not viable in an FAA review. All right. Thank you very much. Thank you. We'll now hear from Mr. Jones for two minutes. Thank you. Now, you left off on a bad note, Your Honor, and I want to jump in there, because you mentioned that this is an ace in the hole for us. It seemed to me that was your argument. Your argument was that they didn't get, the arbitration award wasn't handed down in the proper time period, and so it's void. It's not something that can be enforced. And I think it actually, unfortunately, it cuts both ways. Even if we had a good decision, it can't be enforced. We can't even move to affirm that arbitration award. The appellee can't, it's a limitation on the court's ability to confirm or vacate an award. So even though the parties did not negotiate in the arbitration agreement a time limit, you're saying that they nonetheless have to comply with Connecticut's statute on this, even though one of the purposes of the FAA is to ensure that parties, that private arbitration agreements are enforced according to their terms. Yes. There's no timeliness term in this agreement, right? Respectfully to the parties of the arbitration agreement, I actually, I may look young, but I've done a lot of arbitrations in Connecticut, and every time I've done an arbitration, it's been a point of fact that you take an oath of the arbitrators, and you've got to comply with these timeline requirements of 30 days. I, frankly, never had a circumstance where someone has gone over the 30 days without a waiver. Your experience is not really going to drive this. No, no, no. I'm saying this only to say that it is an expectation of parties to an arbitration in Connecticut that these are the timeline requirements. These are the expectations of parties. I guess my position would also be the FAA has a specific preemption provision, and your argument is that it does not reach this Connecticut statute. Correct. Why don't you explain why? Well, the preemption provision, like I said, it doesn't apply to, it only preempts, I think I said this before, it only applies if the state laws or some other technicality would invalidate the arbitration agreement in whole. Well, no. I mean, in Westbrook, we specifically said we weren't validating their, we weren't saying what Connecticut statute did or didn't say, but we said that for purposes of federal enforcement of an arbitration, we are not going to adopt a rule that encourages post-award technical objections by a losing party, and that it's a better rule for purposes of our federal enforcement that any limitation on the time in which an arbitrator can render his award to be a directory limitation, not a mandatory one, and it would always be within a court's discretion to uphold the late award if no objection to the delay has been made prior to the rendition of the award, or there's no showing that actual harm to a losing party was caused by the delay. Why isn't that reasoning four square applicable to this case? And again, I think it's distinguishable here, because first of all, that issue, the issue is not before this court again, and also because I believe we've proceeded under the expectation that Connecticut law under these timelines would apply here. All the parties, even in the litigation here, never brought up this issue. It was all under that this statute does apply, it's just the effect is a nullity here, so on and so forth. I don't think Westbrook is, it is distinguishable from this circumstance. All right. Okay. Well, thank you, Mr. Jones and Ms. Sheehan. We will reserve decision.